```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF RHODE ISLAND
```

\- - - - - - - - - - - - - - - -
UNITED STATES OF AMERICA       :
                                               :
    v.                         :    CR No. 05-137-04 S
                                               :    CR No. 06-025 S
ALEJANDRO R. PUJOLS-TINEO      :
\- - - - - - - - - - - - - - - -

## MEMORANDUM AND ORDER

WILLIAM E. SMITH, United States District Judge.

    Alejandro R. Pujols-Tineo ("Pujols") has filed a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (ECF No. 174) in each of the above matters. For the reasons that follow, that motion is denied.

I.    FACTUAL BACKGROUND AND TRAVEL

    Pujols, a native of the Dominican Republic, was charged with conspiracy to possess with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B) and 846 (Count I); and possession with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) (Count II). He pled guilty to these charges.

    Separately, Pujols was charged with illegal reentry in violation of 8 U.S.C. §§ 1326(a) and (b)(2). See United States v. Pujols-Tineo, CR 06-025 S. He also pled guilty to this charge.[1]

---

[1] Under the terms of both plea agreements, in exchange for the Pujols's plea of guilty to his respective offenses, the Government agreed to recommend a sentence at the lowest end of the applicable guideline range or the mandatory minimum sentence, whichever was applicable, and a two- or three-level reduction in offense level for acceptance of responsibility. (See Plea Agreement ¶ 2, CR 05-137 S, Feb. 28, 2006, ECF No. 42; Plea Agreement ¶ 2, CR 06-025 S, Feb. 28, 2006, ECF No. 8.) Both plea agreements also provided that the Government's sentencing recommendations were not binding on

In the course of this plea, Pujols admitted that he was deported on two separate occasions (in 1991 and again in 1997) after having been convicted of drug offenses or crimes of violence and illegally reentered this country after each removal. (See Change of Plea Hr'g Tr. CR 06-025 S at 9-11, Apr. 4, 2006 ("4/4/06 Plea Tr.").) Thereafter, his illegal reentry case was consolidated with his drug case.

In all proceedings in this Court as to both prosecutions, Pujols was represented by Assistant Federal Defender Edward C. Roy ("Roy"). There is no indication in the record as to whether law enforcement notified the consulate of the Dominican Republic of Pujols's arrest and detention or whether Pujols's counsel advised him of his right to such notification.

The Presentence Report ("PSR") prepared by the U.S. Probation Office found that Pujols was a career offender which resulted in a net offense level of 31 (after a 3-level reduction for acceptance of responsibility), a criminal history category VI and an advisory guideline range of 188–235 months imprisonment. Attorney Roy objected to the PSR on behalf of Pujols, including an objection to the career offender designation. At the sentencing hearing on July 14, 2006, this Court rejected Pujols's objections and sentenced him to 216 months in prison, the mid-point of the applicable guideline range. (See Sentencing Hr'g Tr. CR No. 05-137 T and CR No. 06-025 T at 6-7, 14-19 ("Sent. Tr.").)

---

this Court and that the Court alone would make all sentencing decisions. (ECF No. 42, ¶ 9; ECF No. 8, ¶ 9.)

Pujols appealed to the First Circuit, arguing (1) ineffective assistance due to trial counsel's request for a below-guidelines sentence, allegedly in violation of the plea agreement, and (2) the lack of an interpreter at certain key proceedings. The Court of Appeals deemed the ineffective assistance claim premature and otherwise affirmed Pujols's conviction and sentence on October 30, 2007. Pujols did not seek further review, and his conviction became final 90 days later, on January 28, 2008.

Pujols then filed the instant motion to vacate.[2] In his motion, Pujols asserts claims of ineffective assistance of counsel and the violation of his right to notify the consulate of his home country of his arrest and prosecution, and also challenges the jurisdiction of this Court over his offenses.[3]

II. DISCUSSION

A. Ineffective Assistance - Sentencing

Pujols first claims that his counsel, after learning that Pujols had attempted to obtain new counsel to represent him at

---

[2] There has been a dispute about whether the motion was timely filed. The Court need not address the issue because the motion, even if timely filed, is without merit.

[3] Although Pujols requests an evidentiary hearing on his claims, no hearing is required because, as discussed infra, the files and records of this case conclusively establish that his claim is without merit. See David v. United States, 134 F.3d 470, 477 (1st Cir. 1998) (district court properly may forego any hearing "when (1) the motion is inadequate on its face, or (2) the movant's allegations, even if true, do not entitle him to relief, or (3) the movant's allegations need not be accepted as true because they state conclusions instead of facts, contradict the record, or are inherently incredible.") (internal quotations and citation omitted).

sentencing, acted in a retaliatory manner by requesting a sentence below the applicable advisory guideline range, which violated Pujols's plea agreement and resulted in a longer sentence. (Mot. to Vacate - Ground One; Mem. of Law in Support of Mot. [to Vacate pursuant to] 28 U.S.C. § 2255 at 2-4 ("Pet'r's Mem.").) [4] Pujols further claims that counsel failed to advise him that he could withdraw his plea under Fed. R. Crim. P. 11(d)(2)(A) after the sentencing court rejected his plea, and failed to request a continuance to permit Pujols to do so. (Id. at 2.)[5]

A defendant who claims that he was deprived of his Sixth Amendment right to effective assistance of counsel must demonstrate:

(1) That his counsel's performance fell below an objective standard of reasonableness; and
(2) [A] reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984); accord United States v. Manon, 608 F.3d 126, 131 (1st Cir. 2010).

For a court to assess the adequacy of counsel's performance, a defendant "'must identify the acts or omissions of counsel that

---

[4] Pujols asserts, "because counsel was upset over the fact that the petitioner hired another attorney[,] making him look bad, [h]e knew the only way to retaliate would be to violate the plea [agreement], and subject the petitioner to a much harsher sentence 'Which he did'". (Pet'r's Mem. at 4.)

[5] This latter claim is confusingly worded. Pujols asserts that his counsel "did not object to the continuation of sentencing" after the court "reject[ed] his plea" (Pet'r's Mem. 2), and later that counsel "did not fully explain to him that if the plea was rejected before sentencing, he had a right to withdraw his plea." (Id. at 3.) This Court construes the claim as set forth above.

4

are alleged not to have been the result of reasonable professional judgment,' and the court must then determine whether, in the particular context, the identified conduct or inaction was 'outside the wide range of professionally competent assistance.'" Manon, 608 F.3d at 131 (quoting Strickland, 466 U.S. at 690). With respect to the prejudice requirement a "reasonable probability is one sufficient to undermine confidence in the outcome. . . . In making the prejudice assessment, [the court] focuses on the fundamental fairness of the proceeding." Manon, 608 F.3d at 131-32 (citations and internal quotations omitted); accord United States v. Theodore, 468 F.3d 52, 56 (1st Cir. 2006).

    Neither of Pujols's claims has merit. As to counsel's request for a below-guidelines sentence, Roy made a reasoned calculation that because the minimum sentence under the applicable advisory guideline range was more than 15 years, Pujols had little to lose by requesting a sentence below the guideline range. The fact that he was unsuccessful does not render his performance deficient. See Myles v. Dahlberg, 937 F.2d 609, *2 (6th Cir. 1991) (Table) ("Just because a lawyer loses on a point does not mean that the lawyer was 'ineffective' for constitutional purposes.").[6]

---

[6] Contrary to Pujols's contention, the request for a below-guidelines sentence did not violate the plea agreement, as that agreement merely provided that if Pujols requested such a sentence, the Government was not required to recommend a sentence at the bottom of the applicable guideline range. (See Plea Agreement ¶ 2.a, ECF No. 42.) For the same reason, the Government's recommendation of a higher (220-month) sentence than that contemplated in the plea agreement did not violate that agreement. In any event, both parties were aware, and the plea agreements expressly provided, that the Court was not bound by the recommendations in the respective plea agreements. (Id. ¶ 9.)

Pujols's assertion that counsel's action was retaliatory is contradicted by the record. At the sentencing hearing, Roy stated to the Court that he had anticipated that new counsel would be appearing on behalf of Pujols at the sentencing hearing, that he had been advised by the putative counsel's office that a memorandum would be filed but nothing was filed, and that for that reason he had not filed a written motion for a below-guidelines sentence. (See Sent Tr. at 7.) Roy further informed this Court that Pujols had asked him to make the request for a below-guidelines sentence. (Id. at 8.)[7] This belies any retaliatory motive or action on the part of Roy. Pujols has produced no evidence to the contrary. Thus, based on the record this Court rejects any claim that he acted in a retaliatory manner in order to harm Pujols.

The fact that under the terms of the plea agreement the request for a below-guidelines sentence enabled the Government to request a higher sentence does not mean that Pujols was prejudiced or that the plea agreement was breached.[8] At Pujols sentencing hearing, Senior Judge Torres stated that he normally began at the midpoint in the guideline range and that in this case he simply did

---

[7] Puljos' belated assertion that "he never made any such request" (Traverse to Government's Response 3, (ECF No. 206)) is not sworn to and need not be considered by this Court. Gonzalez-Gonzalez v. United States, 49 Fed. Appx. 322, 323 (1st Cir. 2002) ("Facts alluded to in an unsworn memorandum are not sufficient.").

[8] The decision in United States v. Riggs, 287 F.3d 221 (1st Cir. 2002), raised by Pujols in his Supp. Reply (at 2-3), does not assist his claim that the Government breached the plea agreement. In Riggs, the Government failed to recommend a sentence based on a drug quantity of five-to-fifty grams of crack cocaine, as provided in the plea agreement, and instead recommended a sentence based on 480 grams of crack cocaine; Riggs was sentenced based on that drug quantity. Id. at 224. Nothing of the sort occurred here.

not find any factors to cause him to impose a lower sentence. (See Sent. Tr. at 14-18.) Senior Judge Torres did not adopt the sentence proposed by the Government (220 months imprisonment), and he considered the factors under 18 U.S.C. § 3553, including a letter from Pujols's wife asserting that Pujols was a good father to his four children before imposing the sentence. (Id.)

Pujols is likewise mistaken in his assertion that counsel should have requested a continuance of sentencing after the Court rejected his plea. The Court did not "reject" Pujols's plea. Rather, Senior Judge Torres simply chose to impose a sentence in the middle of the applicable advisory guideline range.

For all these reasons, Pujols's ineffective assistance claims are without merit, as they show neither deficient performance nor prejudice. See Strickland, 466 U.S. at 687-88.

B. Claims under Vienna Convention

Pujols next claims that his consular rights under the Geneva Convention were violated in his prosecution. He asserts that his requests for permission to contact the consulate of the Dominican Republic, his native country, to advise it of his arrest and to request counsel from his native country were ignored by both police and his counsel. (Mot. to Vacate - Ground Two, Pet'r's Mem. at 4-5.)

The Vienna Convention on Consular Relations ("Vienna Convention") requires consular notification when a foreign national is arrested.[9] See Baires v. United States, 707 F. Supp. 2d 656,

---

[9] Pujols mistakenly refers to the Vienna Convention in his motion, a mistake he concedes in his supplemental reply. The Court construes the claim as one under the Vienna Convention.

7

663 n.4 (E.D. Va. 2010) (citing Art. 36, Vienna Convention on Consular Relations, 21 U.S.T. 77 (Dec. 14, 1969)).[10]

To the extent Pujols's Vienna Convention claim is asserted as a direct claim, it is procedurally barred, as Pujols did not raise

---

[10] Courts have noted that "[w]hen a foreign national is detained, Article 36 imposes three obligations on the arresting authority. The law enforcement agency must: (1) inform the consulate of a foreign national's arrest or detention without delay; (2) forward communications from a detained national to the consulate without delay; and (3) inform a detained foreign national of his rights under Article 36 without delay." Sandoval v. United States, 574 F.3d 847, 850 (7th Cir. 2009) (internal quotations and citation omitted). "In addition to providing a 'cultural bridge' between the foreign detainee and the American legal system, the consulate may also 'conduct its own investigations, file amicus briefs and even intervene directly in a proceeding if it deems that necessary.'" Id. (quoting Osagiede v. United States, 543 F.3d 399, 403 (7th Cir. 2008)).
Whether the right to consular notification is an individually enforceable right is the subject of considerable debate by the courts. See Medellin v. Texas, 552 U.S. 491, 506, n.4 (2008) (assuming without deciding that right to consular notification is an individually enforceable right); Sanchez-Llamas v. Oregon, 548 U.S. 331 (2006) (same); compare, e.g., Cornejo v. County of San Diego, 504 F.3d 853, 859-64 (9th Cir. 2007) (concluding that Article 36's obligation to inform aliens of their right to consular notification does not create judicially enforceable individual rights); United States v. Emuegbunam, 268 F.3d 377, 391-94 (6th Cir. 2001) (same), and United States v. Jimenez-Nava, 243 F.3d 192, 196-98 (5th Cir. 2001) (same), with Jogi v. Voges, 480 F.3d 822, 834-35 (7th Cir. 2007) (concluding that Article 36 creates individual rights to be informed of consular notification), and Osagiede, 543 F.3d at 402 (same). In the only case in which the issue arose, the First Circuit did not conclusively resolve the question and presented similarly divergent conclusions. Compare United States v. Li, 206 F.3d 56, 66-68 (1st Cir. 2000) (en banc) (Selya and Boudin, JJ., concurring) (suggesting that individual rights are not created), with Li, 206 F.3d at 68-76 (Torruella, J., concurring in part; dissenting in part) (concluding that Article 36 creates a judicially enforceable individual right to be advised about the prospect of consular assistance).
This Court need not resolve the question in this case because even assuming that the right to consular notification is an individually enforceable right, it is asserted here in the context of a Sixth Amendment ineffective assistance claim, see infra, and will be so adjudicated. See Osagiede, 543 F.3d at 408 (noting that "Sanchez-Llamas appears to express a preference" that Vienna Convention claims be brought as part of "broader constitutional attacks").

it at any stage of the proceedings either before the district court or on direct appeal, and he does not show cause or prejudice  See Owens v. United States, 483 F.3d 48, 56-57 (1st Cir. 2007) (citing United States v. Frady, 456 U.S. 152, 168 (1982)).

Pujols further contends, however, that his counsel failed to act on his request to contact his consulate and states in his Supplemental Reply that he intended to assert this claim "in the context of ineffective assistance of counsel." (Supp. Reply 4.) Even if construed as alleging ineffective assistance of counsel, the claim does not warrant relief. First, beyond asserting that he requested both law enforcement and his counsel to notify his consulate, Pujols provides no details of those requests. He has thus not shown that his counsel performed deficiently. See Duran-Martinez v. United States, No. 07-C-536, 2007 WL 3342585 at *2 (E.D. Wis. Nov. 8, 2007) (rejecting ineffective assistance claim based on failure to investigate violations of consular notification rights under Vienna Convention, where petitioner "fail[ed] to provide the court any specific facts as to whether he requested consular notification, what he asked his attorney to investigate, how her investigation was deficient").

Second, even assuming that no consular notification occurred[11] and that Pujols's counsel unreasonably failed to advise Pujols of his right to such notification, Pujols has not shown how he was

---

[11] The Government's contention that Magistrate Judges routinely inquire in cases involving detained aliens as to whether consular notification has taken place and that the Bureau of Immigration and Customs Enforcement (ICE), and its predecessor INS, routinely make consular notifications when aliens are detained pending criminal prosecution (Gov't. Supp. Mem. 16), does not show that the consular notification occurred in this case, and this Court does not so find.

prejudiced, so as to satisfy the second prong of the Strickland standard. Specifically, he does not allege how he was prejudiced and how the result of the proceedings would have been different had the required consular notification taken place. Nor does he explain how assistance from the Dominican Republic consulate could have produced a better result for him. Moreover, at his change of plea hearing, Pujols admitted that he was guilty of drug charges and that he had reentered the country illegally on two separate occasions after committing crimes. (See 4/4/06 Plea Tr. 9-11.) Thus, this Court finds that it is highly unlikely that notice to the Dominican Republic consulate would have changed the result in this case, or have resulted in a lower sentence.[12]

Other courts have reached a similar conclusion. See, e.g., Sandoval v. United States, 574 F.3d 847, 850-51 (7th Cir. 2009) (affirming denial of § 2255 relief where petitioner failed to show whether and how Mexican consulate would have assisted in his defense); Baires, 707 F. Supp. 2d 656 (no prejudice resulting from belated consular notification); Duran-Martinez, 2007 WL 3342585 at *2 (finding no prejudice from counsel's failure to investigate violations of consular notification rights under Vienna Convention); see also Breard v. Greene, 523 U.S. 371, 377 (1998)

---

[12] Two cases cited by Pujols do not help him. Sanchez-Llamas, 548 U.S. 331, does not support his position but, if relevant at all, actually suggests the opposite result, as the Supreme Court held that a Vienna Convention violation does not trigger the exclusionary rule. Id. at 348-50. In Osagiede, the Seventh Circuit, in the course of remanding the case for an evidentiary hearing on petitioner's consular notification claim under Article 36, noted that petitioner still had to "more than show a credible indication of the services [his] consulate would have provided." 543 F.3d at 413 n.13. Here, Pujols has not shown even a credible indication of such services.

(finding it "extremely doubtful that [a Vienna Convention] violation should result in the overturning of a final judgment of conviction without some showing that the violation had an effect on the trial").

Because Pujols has not shown prejudice, his ineffective assistance claim concerning consular notification fails. See Strickland, 466 U.S. at 692.

C. Jurisdictional Claims

Pujols further claims that the crimes in question were "committed against a state within North America," that there are no states that were ceded to the United States and that therefore, this Court had neither territorial jurisdiction nor subject matter jurisdiction over him or his offenses. (Mot. to Vacate, Ground Three; Pet'r's Mem. 5-16.) Specifically, Pujols contends that the United States did not have territorial jurisdiction over the "exact geographical location" of the crime, but does not state where the "exact geographical location" is. Similarly, Pujols postulates that without the production of certain documents demonstrating, inter alia, that all states in the union have relinquished their jurisdiction to the Federal Government, then the Federal Government does not have subject matter jurisdiction over him.[13]

Neither claim warrants extended discussion. His territorial claim -- that this Court did not have jurisdiction to adjudicate his criminal offense because the property on which it occurred was

---

[13] Pujols's rambling and disorganized discussion of his jurisdictional claims includes allegations that he was "Kidnapped" by federal authorities and reliance on the Articles of Confederation and case law dating back to 1818. (Pet'r's Mem. 5, 10-12.)

11

not owned or administered by the federal government -- has been rejected as a "silly claim" by several courts of appeals, including the First Circuit. See United States v. Lussier, 929 F.2d 25, 27 (1st Cir. 1991) (citing United States v. Koliboski, 732 F.2d 1328, 1329 (7th Cir. 1984) and cases cited therein). "It is well settled that a district court has personal jurisdiction over any party who appears before it, regardless of how his appearance was obtained." Id.

As to subject matter jurisdiction, 18 U.S.C. § 3231 indisputably gives the district courts subject matter jurisdiction over "all offenses against the laws of the United States." Lussier, 929 F.2d at 27 (citations omitted). See also Cantrell v. Reno, 36 Fed. Appx. 651, 652 (1st Cir. 2002) ("The trial court's jurisdiction under 18 U.S.C. § 3231 is not restricted to crimes occurring on federally owned property.") (citing United States v. Mundt, 29 F.3d 233, 237 (6th Cir.1994)). This category of offenses includes drug offenses defined in Title 21. See Prou v. United States, 199 F.3d 37, 45 (1st Cir. 1999).

Accordingly, Pujols's jurisdictional claims fail.

This Court has considered all of Pujols's other arguments and finds them to be without merit.[14]

---

[14] Pujols briefly adverts to the failure of his appellate counsel to raise the denial of his consular notification rights and the jurisdictional issue on appeal. (Mot. to Vacate, Grounds Two, Three.) Because he does not develop this argument, it need not be addressed. See United States v. Jiminez, 498 F.3d 82, 88 (1st Cir. 2007) (noting "the well-settled appellate rule that 'issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'") (quoting United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990)). In any event,

III. CONCLUSION

For all of the foregoing reasons, Pujols's claims must be rejected and his motion to vacate is hereby DENIED and DISMISSED.

## RULING ON CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings in the United States District Courts ("§ 2255 Rules"), this Court hereby finds that this case is not appropriate for the issuance of a certificate of appealability (COA), because Pujols has failed to make a substantial showing of the denial of a constitutional right as to any claim, as required by 28 U.S.C. § 2253(c)(2).

Pujols is advised that any motion to reconsider this ruling will not extend the time to file a notice of appeal in this matter. See § 2255 Rule 11(a).

SO ORDERED:

*/s/ William E. Smith*
William E. Smith
United States District Judge
Date: March 10, 2011

---

in light of this Court's conclusion, supra, that these claims are without merit, failure to raise them on appeal does not amount to ineffective assistance.